IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LESTER JOE HILL                                                        PETITIONER

     V.                                        No.  2:08-CV-02082-RTD

LARRY NORRIS, Director,
Arkansas Department of Correction                                      RESPONDENT

**ORDER**

Before the undersigned is the Defendant's Motion to Limit Scope of Scheduled

Evidentiary Hearing (Doc. 45) filed May 18, 2009.  The petitioner filed a Habeas Corpus

Petitions (Doc. 1) on July 24, 2008 under 28 U.S.C. Section 2254 and the Respondent filed its

Response (Doc. 7) on September 11, 2008.  The Respondent filed a Motion for Summary

Judgment (Doc. 21) on January 21, 2009 which was denied (Doc. 27) on January 23, 2009.  A

limited Evidentiary Hearing was conducted on January 30, 2009.  As a result of the hearing the

court appointed Shannon Blatt to represent the Petitioner (Doc. 40) and the case was set for an

evidentiary hearing on the Petition for June 16, 2009 which date has been continued to

**I.  Background**

The Petitioner was found guilty by a jury in Sebastian County Circuit court on July 12,

2006 of Kidnaping and two counts of Rape.  He was sentenced to the Arkansas Department of

Correction for 120 months on the Kidnaping charge and 408 months on the two counts of Rape.

(Doc. 1-5)

A proper notice of appeal was filed on July 24, 2006 by Petitioner's trial counsel.   On

-1-

December 22, 2006 trial counsel was allowed to withdraw and Melissa Sawyer was appointed to complete the appeal.  The Court of Appeals affirmed the Judgment of Conviction on October 31, 2007. (See **Hill v. State, WL 3172608**) The Petitioner filed a Pro Se Petition for Rehearing (See **Petitioner's Exhibit 12**) on November 14, 2007 but the Court of Appeals denied the Motion for Rehearing and issued its mandate on December 5, 2007. (See **Resp. Exhibit 1**)

The Petitioner then filed a Motion for Leave to File an Overlength Petition for Rule 37 Relief Beyond the 10 Page Limit (See **Petitioner's  Exhibit 1**) on January 22, 2008.  No Rule 37 Petition was filed as of February 29, 2008 as stated by a letter from the Sebastian County Clerk's office.  (See Petitioner's Exhibit 11)

It appears that the Petitioner then filed a Petition for Post-Conviction Relief Pursuant to A.R.C.P. Rule 37.1 on June 5, 2008. In the petition the Petitioner makes many allegations against his trial lawyer and also contended that "Melissa Sawyer further failed to file Petitioner's Rule 37.1 petition after taking responsibility to do so.." (See **Doc. 27, Attachment 1, p.4-11**) Attached to the Petition for Post-Conviction Relief was an exhibit which purported to be a letter dated April 12, 2008 from Ms. Sawyer which stated that she and Mr. Hill "discussed whether or not" she was going to represent him in the Rule 37 petition.  There is language in the letter which seems to indicate that she did agree to represent him in the case but could not complete the petition because of mental anxiety over the charge. This Petition was properly denied by the Circuit Court by Order (See **Doc. 27, Attachment 1, p. 16**) dated June 17, 2008.  It does not appear that any appeal has been taken from the ruling of the Sebastian County Circuit Court.

The Petitioner now brings this Habeas action under 28 U.S.C. section 2254 alleging ineffective assistance of counsel and contending that he was denied a "(1) fair and impartial trial,

(2) proper review of the trial proceedings by the [sic] appellant court, and (3) counsel's performance denied petitioner a post conviction remedy.  (**Doc. 1**) The Petitioner has raised 26 points to support his claim.  He contends that his retained counsel, Ms. Sawyer, failed to file a timely Rule 37 petition (B); that his appointed appellate council failed to argue maters that were properly objected to at trial (A); and that the trial council made numerous errors during the course of the trial (C through X)  The Petitioner has petitioned the court for an evidentiary hearing for the purpose of taking testimony from his trial and appellate counsel and that an attorney be appointed.

The Respondent contends that the Petitioner failed to file a timely Rule 37 petition and that he is now procedurally barred from raising the ineffective assistance of counsel claim against his trial attorney. (**Doc. 7**)

An initial evidentiary hearing was conducted for the limited purpose of determining if there was proper cause for the Petitioner's failure to file a timely Rule 37  petition in Sebastian County Circuit Court.  At the hearing Ms. Melissa Sawyer, Julie Burruss and Lester Hill testified. The court subsequently set the matter for an evidentiary hearing and appointed Shannon Blatt to represent the Petitioner.

## II.  Discussion

The Petitioner's appeal was affirmed by the Arkansas Court of Appeals on October 31, 2007.  The Petitioner filed a Pro Se Petition for Rehearing on November 14, 2007 which was denied by the Court of Appeals and the Mandate was issued on December 5, 2007.  (See *Hill v. State, Not Reported in S.W.3d 2007, WL 3172608*)   The Petitioner had 90 days from December 5, 2007 to bring his claim under Rule 37. (Ark. R. Crim. P., Rule 37.2).  The claim is

procedurally barred from review under *Wainwright v. Sykes,* 433 U.S. 72 (1977) and *Coleman v. Thompson,* 501 U.S. 722 (1991) because Petitioner failed to raise this claim in a state post-conviction proceeding and thereby give the state courts the first opportunity to address it. "To be eligible for federal habeas relief, a state prisoner must first exhaust his state law remedies and fairly present the facts and substance of his habeas claim to the state court." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007)(internal quotation marks omitted).

Federal review of a habeas corpus petition is barred when a state court dismisses or rejects a prisoner's claims on independent and adequate state grounds unless the petitioner establishes cause for the default and actual prejudice resulting from the alleged violations of federal law. See *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 81-83, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

"Unless a habeas petitioner shows **cause and prejudice** a court may not reach the merits of ... procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." *Sawyer v. Whitley*, 505 U.S. 333, ----, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992) (citations omitted).

Under this standard, cause is established when "some objective factor external to the defense impede[s] counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. 478 at 488, 106 S.Ct. 2639 (1986). The Court has not assayed "an exhaustive catalog of such objective impediments," see id., and the precise contours of the cause requirement have not been clearly defined. See *Amadeo v. Zant*, 486 U.S. 214, 221, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988). See also *Jamison v. Lockhart*, 975 F.2d 1377, 1379-80 (8th Cir.1992)( The court considered the claim of ineffective assistance of counsel even though procedurally barred.)

-4-

The courts have previously held that petitioner's lack of knowledge and their own ignorance of the law is no basis for granting relief. See *Jackson v. Ault*, 452 F.3d 734, 736-37 (8th Cir.2006) (attempt to obtain post conviction counsel)*; Maghee v. Ault*, 410 F.3d 473, 476 (8th Cir.2005) (failure to understand the plain language of a dismissal notice); *Shoemate v. Norris*, 390 F.3d 595, 598 (8th Cir.2004) (prisoner's misunderstanding of proper procedure to file state petition); *Cross-Bey v. Gammon*, 322 F.3d 1012, 1016 (8th Cir.2003) (petitioner's lack of understanding of the law, and of the effect of his voluntary dismissal); *Baker v. Norris*, 321 F.3d 769 at 771-72 (limited access to law library and advance sign-up; ignorance of AEDPA's enactment); *Jihad v Hvass*, 267 F.3d 803 at 806-07 (unsuccessful search for counsel, and lack of access to trial transcript); *Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir.2001) (delays in obtaining trial)

Although mere attorney error or inadvertence will not ordinarily supply sufficient cause to excuse a procedural default, cause exists when an attorney's error is so egregious that he ceases to be an agent of the petitioner. *Jamison v. Lockhart*, 975 F.2d 1377, 1380 (8th Cir.1992). *Hunt v. Houston*,  2008 WL 822401, 21 (D.Neb.) (D.Neb.,2008) Similarly, an attorney's actual conflict of interest will furnish sufficient cause for a procedural default. Id.

The first issue the court has to decide is whether there was cause for the Petitioner's default.  An examination of the prejudice prong is not warranted when Petitioner has failed to establish cause for his procedural default.  *McCleskey v. Zant*, 499 U.S. 502 (1991)

There is no right to counsel in state post-conviction proceedings, *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991), and thus a claim that post conviction appellate counsel was ineffective does not constitute cause for default. *Lowe-Bey v.*

*Groose*, 28 F.3d 816, 819 (8th Cir.), cert. denied, 513 U.S. 1061, 115 S.Ct. 674, 130 L.Ed.2d 606 (1994);*Reese v. Delo*  94 F.3d 1177, 1182 (C.A.8 (Mo.),1996)

When Ms. Sawyer completed her appeal and the Court of Appeal entered the mandate affirming the conviction her representation of Petitioner ended.  Ms. Sawyer testified that she discussed the Rule 37 procedure early in her representation of the Petitioner and that Petitioner understood the procedures for filing a Rule 37 petition.  It appears that she visited the Petitioner on January 17, 2008 and, because she felt sorry for the Petitioner, she agreed to represent the Petitioner and to file the Rule 37 for him.  (See **Petitioner's Exhibit 3**) She clearly understood the filing deadline and the Petitioner was also aware of the filing deadline.

The Petitioner testified that he had a draft of the Rule 37 petition and that he gave all of his research papers and the draft  to Ms. Sawyer so she could complete the petition.  Ms. Sawyer testified that she did receive a draft of the Rule 37 petition and some papers from the Petitioner, but did not believe it was all of his paperwork.  Regardless it is undisputed that she agreed to file the Rule 37 petition for him.

The Petitioner had filed his Motion for Leave to File an Overlength Petition for Rule 37 Relief Beyond the 10 page limit on January 16, 2008, the day before Ms. Sawyer came to visit him. (See **Petitioner's Exhibit 1**)

Sometime after the visit on January 17,  the Petitioner appears to have written Ms. Sawyer and stated "PLEASE, PLEASE, PLEASE remember to file it on time.  I would REALLY like it if you have it mailed by Wednesday January 30 and then when you come to visit on the 31st or Feb. 1st and bring me a copy of what you filed I will be relieved".  (See **Petitioner's Exhibit 2**)

-6-

The Petitioner testified that he expected Ms. Sawyer to visit him on her way to file the petition. Ms. Sawyer gave no explanation why she did not file the Rule 37 petition. She did testify that she did not believe some of the allegations that the petitioner had made, and that some of the allegations turned out to be untrue. Ms. Sawyer also testified that she had emotional issues herself that made working on the Rule 37 petition difficult. (See **Petitioner's Exhibit 5**) No adequate explanation was provided to the court as to why Ms. Sawyer did not file a timely Rule 37 petition.

Ms. Sawyer not only did not file the Rule 37 petition, she did not inform her client that she did not intend to file it. The Petitioner subsequently wrote the Sebastian County Clerk's Office inquiring about his Rule 37 petition and was informed by the clerk on February 29, 2008 that no Rule 37 petition had been filed. (See **Petitioner's Exhibit 11**)

The Petitioner then filed his Pro Se Petition for Post Conviction Relief Pursuant to A.R.C.P. Rule 37.1 (See **Doc. 27, Attachment 1, page 4-12**) on June 5, 2008. The Sebastian County Circuit Court correctly denied Petitioner's Rule 37 petition (See **Doc. 27, Attachment 1, page 16**) by order entered June 17, 2008. Time limitations imposed in Rule 37.2(c) are jurisdictional in nature, and the circuit court may not grant relief on an untimely petition. *Harris v. State*, 318 Ark. 599, 887 S.W.2d 514 (1994);*Womack v. State,* 368 Ark. 341, 343, 245 S.W.3d 154, 155 - 156 (Ark.,2006)

When the petitioner was asked why he did not file his Rule 37 on his own initiative, even after he had delivered his papers to his attorney, he stated that he had to have all of his "legal research" because he believe he had to give citations for the arguments he was making in his Rule 37 motion.

Rule 37.1 states that "[T]he petition shall state in concise, nonrepetitive, factually specific language, the grounds upon which it is based. The petition, whether handwritten or typed, shall be clearly legible, and shall not exceed ten pages or thirty lines per page and fifteen words per line, with left and right margins of at least one and one-half inches.."   See A.R. Cr. P., Rule 37.1

There is nothing in the rule that requires the petitioner to set forth case citations to support his claim.  For the petitioner to claim that he was not familiar with this rule is not believable in that he specifically cited the rule when he requested the Sebastian County Circuit Court to allow him to exceed the 10 page limit on January 16, 2008 (See **Petitioner's Exhibit 1**) which motion was mailed approximately two weeks before the time for filing the Rule 37 expired. That request was denied by the Sebastian County Circuit Court and the Petitioner acknowledged that he was aware of that denial prior to the time expiring.  The Petitioner was obviously operating under a mistaken understanding of the law which would not be proper cause. (See **Shoemate v. Norris**, Id) While this assertion would not ordinarily be sufficient, in this particular case the Petitioner's attorney's conduct was so egregious as to no longer operating as an attorney.

Even if there was cause for the Petitioner not filing his Rule 37 petition he must also demonstrate prejudice. Ms. Sawyer's conduct effectively denied the Petitioner his constitutional right to have any court review of the effectiveness of his trial counsel.  The court felt that the Petitioner was prejudiced and scheduled the petitioner for an evidentiary hearing and appointed counsel to represent the petitioner.

The Respondent has filed a Motion in Limine concerning some of the contentions which the Petitioner has asserted in his Habeas Corpus Petition. "A federal court may dismiss a claim

without an evidentiary hearing where the allegations are frivolous, where the allegations fail to

state a constitutional claim, where the relevant facts are not in dispute, or where the dispute can

be resolved on the basis of the record." *Urquhart v. Lockhart, 726 F.2d 1316 (8th Cir.1984)*. The

court will deal with the issues raised in the Motion in the order they are raised but will maintain

the lettering identification attached to each of the Petitioner's claims.

### III.  Conclusions

**A.  Appeal Counsel failed to raise issues on appeal**:

The Petitioner contends that Ms. Sawyer failed to argue on appeal that the court erred in

not granting the defense Motion for Directed Verdict.  This argument is without merit.  The State

produced the victim who testified that she was abducted at knife point and raped.  She identified

her attacker from a photo line up prepared by the police. (Tr. 173-210) Mary Simonson, a

forensic biologist testified that she compared a DNA sample from the victims under ware with

the Petitioner's DNA with a positive result. (Tr. 246) The police obtained the video surveillance

footage from a camera at the scene which ultimately led to the arrest of the Petitioner. The

Petitioner gave a 40 page statement to the police in which he admitted encountering the victim on

the day in question but denied kidnaping her or raping her and claimed that sexual contact

between he and the victim was consensual.  (Tr. 308-342) There would clearly be no basis for the

court to grant a directed verdict in favor of the petitioner.

The Petitioner also contends that his appeal attorney failed to argue that the search

warrant for the petitioner's home listed the wrong address.  This issue was not raised by trial

counsel and therefore not preserved for appeal.  It does appear that the search warrant list the

address to be searched as "3303 South 66nd St." (Tr. 97), but the return on the search warrant list

-9-

the address as "3303 South 62nd St."   The petitioner's home address was actually 3303 South

62nd Street and was correctly listed in the affidavit (Tr. 99-100) which was made part of the

search warrant. In addition the same officer that applied for the search warrant was the officer

that had the Petitioner's house under surveillance and made the arrest of the Petitioner when he

exited his home. (Tr. 85) A technical error in a search warrant is minimized when the affiant is

also the searching officer. *Walley v. State*, 353 Ark. 586, 112 S.W.3d 349 (2003); *Lyons v.*

*Robinson*,  783 F.2d 737, 738 (C.A.8 (Ark.),1985).  The Petitioner Motion in Limine as to Count

**A is GRANTED.**

**B.  Attorney Melissa Sayer failed to file petitioner' Rule 37 petition:**

Ms. Sawyer was not Petitioner's state appointed attorney for the purpose of handling his

Rule 37 petition.  She had been appointed to handle the Petitioner's appeal (See Defendant's

Exhibit 1) but that duty ended when the appeal was denied.  There is no right to counsel in state

post-conviction proceedings, *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546, 2566,

115 L.Ed.2d 640 (1991), but Ms. Sawyer testified that she did agree to represent the Petitioner in

his Rule 37 Petition but that she negligently and wilfully failed to file the Rule 37 Petition even

though she had stated that she would.

Because of Ms. Sawyer's wilful and negligent actions the Petitioner was procedurally

barred from raising any ineffective of assistance claim against his trial attorney.  The court has

set an evidentiary hearing to determine if the trial counsel actions were ineffective and therefore

Ms. Sawyer's actions, while grossly negligent cannot constitute a basis for success under 28

U.S.C., section 2254 because no prejudice can be shown and the State's Motion in Limine as to

Count **B is GRANTED**.

-10-

**D.  Poor Quality of Video**:

The Petitioner contends that the trial attorney was ineffective because he was only provided with poor quality black & white video of the crime scene and a better quality color video was used at trial.

The Arkansas Rules of Criminal Procedure provides that the prosecuting attorney shall disclose to the defense counsel, upon timely request, any books, papers, documents, photographs or tangible objects, which the prosecuting attorney intends to use in any hearing or at trial. (See Ark. R. Crim. P., Rule 17.1(a)(v)) The Defense made a timely request by a Motion for Discovery filed January 30, 2006. (Tr. 11-12)

It appears that the original surveillance tape was in a VHS format and it was tendered to the police by the manager of the car wash shortly after the incident. (Tr. 252-253)  The VHS tape was introduced without objection as State's Exhibit 14.  (Tr. 284). The police had this converted to a DVD format and this was introduced by the State as Exhibit 18. (Tr. 285).  The defense introduced their own copy of the VHS tape in DVD format (Defense Exhibit 1) through an expert that had enhanced a portion of the tape. (Tr. 272-273).  It is obvious that both the State and the defense used portions of the VHS tape that they felt were advantageous to them.

A factual question does exist concerning whether the State did comply with the Arkansas Rules of Criminal Procedure and whether this had any effect on the trial. The Defendant's Motion in Limine as to Count **D is DENIED**.

**E.  Video not True Representation:**

The Petitioner contends that his trial attorney was ineffective because the video was not played in real time to the jury.  The Petitioner contends that during the real time showing of the

-11-

video there would have been "long pauses when alleged victim was not vacuuming or anything and would have caused jury to wonder what alleged victim was doing".

The court would note that in the prosecuting attorney's closing to the jury he referred to the tape. He stated to the jury "[W]atch that video tape. I want you at some point in your deliberations to look at that video tape. At 19:22:28 the Defendant backs in. At 19:22:58 the Defendant deposits money for the first time. At 19:27:40 the Defendant turns around. At 19:28:28 the Defendant deposits money again. At 19:33:10 the Defendant turns around again. At 19:33:53 the Defendant deposits money. At 19:38:15 the Defendant looks around, clearly scoping. At 19:39:01 the Defendant deposits money for the fourth time. At 19:40:46 Katherine Gray walks around to the driver's side clearly. At 19:42:42 the Defendant is walking back, deliberately, purposely. At 19:43:09 slams the trunk. You see that little black blob. I don't know what that blob is. I am not a videographer. I am not an expert. You are the experts in this case. Look at 19:43:39 and see that white blob again. I am saying that is movement in the car. You have got a 190 pound, six foot guy getting in the care with her, they are moving around. She is moving over the console, the car shakes, and the light flashes. You can't say that is her head. Her hair is dark. It is not white. Embrace this video, look at this video, examine it." (Tr. 398-399) It is clear that the jury was well aware of the entire time sequence set forth in the video and it appears that the jury did view the video in its entirety. (Tr. 404) The Petitioner did contend at the hearing on the Motion in Limine that there was a time differential in the running of the DVD and the actual time that expires. The court did not have the DVD or the VHS at the hearing and the court will reserve ruling on this aspect of the Motion until it has had an opportunity to review the VHS and the DVD. The Defendant's Motion in Limine as to count **G is RESERVED**.

**F.  Search Warrant:**

Trial attorney failed to object to Search Warrant, Affidavit and Return, for blood DNA of petitioner, which lead detective, M. McCoy forged the judges signatures and while doing so Det. McCoy neglected to sign his own name.

The defense attorney did file a Motion to Suppress the Defendant's statement and certain evidence seized (Tr. 14-15) and a hearing was conducted on March 16, 2006.  At the beginning of the hearing the defense attorney made the following statement: "[M]r. Shue called me earlier this week and talked about a warrant that was obtained.  Apparently the warrant was not done correctly to obtain a DNA sample from my client.  Plus, the officer did not sign the affidavit in front of you.  I am not going to object to that because that is something that they could solve by getting another DNA sample.  We would waste everybody's time.  I discussed that with my client last night.  So, I am not going to challenge that seizure of that DNA sample."  (Tr. 82)

There was a video of the Defendant getting into the victim's car.  The Defendant had admitted to sexual contact with the victim and had always asserted that the sexual contact was consensual and the defense strategy was built around the defense of consensual sex. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *U.S. v. Rice*, 449 F.3d 887 at 897 (*quoting Strickland*, 466 U.S. at 690, 104 S.Ct. 2052).  See also *Francis v. Miller*, 557 F.3d 894 (8th Cir. 2009) (trial strategy decision, if reasonable at the time, cannot support ineffective assistance claim even if, in hindsight, better choices could have been made).  The Petition contends that the police officer forged the name of the judge on the return for the warrant and if his trial attorney had been able to establish this at a hearing on a motion to suppress he would have been able to attack the

-13-

credibility of the witness.  The court believes that there is a factual issue in regards to this issue and the Motion in Limine as to count **F is DENIED**.

### G.  Failure to Object:

Trial attorney failed to object to, investigate or call for a mistrial when Det. Joplin and Det McCoy both testified that they searched petitioner's residence on September 27, 2005 and the Search Warrant was not obtained until September 28.

Detective Joplin did testify that he searched the defendant's home on September 27, 2005. (Tr. 267).  Detective McCoy testified that he searched the defendant's home on September 27, 2005 but acknowledged, after viewing the search warrant that "[I]t is actually on the 28th."  (Tr. 297) The officer also stated that he questioned the defendant on the 27th and the search of the residence occurred after he was questioned.  (Tr. 303) This is made clear on cross examination, in response to defense counsel's question, the officer stated that the search warrant was executed on September 28.  (Tr. 351) This was confirmed again during the officer's cross examination that they arrested the defendant on the 27th and did the search on the 28th.  (Tr. 357)

An attorney is under no obligation to undertake an unpromising investigation.  *Harvey v. United States*, 850 F.2d 388, 403 (8th Cir. 1988).  It is clear that Officer Joplin just mis-spoke during his testimony and the evidence is undisputed that the defendant was arrested on the 27th and the search occurred after the search warrant was obtained.  It would have been very counter productive for the defense to argue to the jury that the search had occurred prior to the search warrant being obtained.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *U.S. v. Rice*, Id. at 897 (*quoting Strickland*, 466 U.S. at 690, 104 S.Ct. 2052).  See also *Francis v. Miller*, Id. (trial strategy

-14-

decision, if reasonable at the time, cannot support ineffective assistance claim even if, in hindsight, better choices could have been made).  The Motion in Limine as to count **G is GRANTED**.

### H.  Refusal of Rape Exam:

The Petitioner contends that his attorney was ineffective because he refused to object to the fact that the victim did not have rape exam. The Petitioner contends that because she did not have an rape exam that she was no longer a rape victim.  A rape victim's testimony need not be corroborated to support a conviction. *Goodman v. State* (Ark.App.,2009) (citing *Pinder v. State*, 357 Ark. 275, (2004)) A victim's testimony that she was forcibly compelled to submit to the rapist constitutes substantial evidence on which to base a conviction. *West v. State*, 27 Ark.App. 49, 766 S.W.2d 22 (1989) (citing Houston v. State, 293 Ark. 492, 739 S.W.2d 154 (1987)). (citing Taylor v. State, 296 Ark. 89, 752 S.W.2d 2 (1988); Lewis v. State, 295 Ark. 499, 749 S.W.2d 672 (1988)). The quantum of force need not be considered as long as the act is committed against the will of the victim. *Spencer v. State*, 255 Ark. 258, 499 S.W.2d 856 (1973).  An attorney is under no obligation to undertake an unpromising investigation.  *Harvey v. United States*, 850 F.2d 388, 403 (8th Cir. 1988). Mr. Dunagin, in his closing argument,  did point out to the jury that no rape exam was done and how important an examination would have been. (Tr. 392) The Motion in Limine as to count **H is GRANTED**.

### J.  Pretextural Search:

The Petitioner claims that when the police stopped his truck on September 27, 2005 that the stop was pretextural.

A pretextual stop does not violate federal constitutional law. See *State v. Harmon*, 353

Ark. 568, 2003), (citing *Ornelas v. United States*, 517 U.S. 690, (1996)). A valid traffic stop will

not be held to be unconstitutional because of a police officer's ulterior motives. See *Harmon*,

supra (citing *Mings v. State*, 318 Ark. 201, 884 S.W.2d 596 (1994)). An otherwise valid stop

does not become unreasonable merely because the officer has intuitive suspicions that the

occupants of the car are engaged in some sort of criminal activity. *Id*. Unlike pretextual arrests,

our common-law jurisprudence does not support invalidation of a search because a valid traffic

stop was made by a police officer who suspected other criminal activity. Id.  *State v. Harris*  372

Ark. 492, 499, 277 S.W.3d 568, 575 (Ark.,2008)

Rule 3.1 of the Arkansas Rules of Criminal Procedure (2007) provides:

A law enforcement officer lawfully present in any place may, in the performance of his
duties, stop and detain any person who he reasonably suspects is committing, has committed, or
is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to
persons or of appropriation of or damage to property, if such action is reasonably necessary either
to obtain or verify the identification of the person or to determine the lawfulness of his conduct.
An officer acting under this rule may require the person to remain in or near such place in the
officer's presence for a period of not more than fifteen (15) minutes or for such time as is
reasonable under the circumstances. At the end of such period the person detained shall be
released without further restraint, or arrested and charged with an offense.

Id. See also *Dowty v. State*, 363 Ark. 1, 210 S.W.3d 850 (2005). "Reasonable suspicion" is

defined as "a suspicion based on facts or circumstances which of themselves do not give rise to

the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare

suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural

suspicion." Dowty, 363 Ark. at 11, 210 S.W.3d at 856 (citing Ark. R.Crim. P. 2.1 (2004)).

"Whether there is reasonable suspicion depends on whether, under the totality of the

circumstances, the police have specific, particularized, and articulable reasons indicating the

person may be involved in criminal activity." Id. at 11, 21 S.W.3d at 856-57 (citing Smith v.

State, 343 Ark. 552, 39 S.W.3d 739 (2001)).

There was nothing pretextural about the traffic stop.  The police had taken a statement

from the victim, who alleged that she had been abducted at knife point, kidnaped and raped.

They had obtained video surveillance of the crime scene, they had identified the defendant and

his vehicle in the video and the victim had picked the defendant out of a photo line up.  The

defendant's vehicle was unique because it was a 1992 Chevy pickup, maroon in color, and on the

sides of it had some decals that said "Viper" with a diagonal line across it.  (Tr. 85-86) Armed

with all of the above information they stopped the defendant while he was in his vehicle and

arrested him on a probable cause arrest.  (Tr. 86)

An attorney is under no obligation to undertake an unpromising investigation.  *Harvey v.*

*United States*, 850 F.2d 388, 403 (8th Cir. 1988).   There would have been no basis for defense

counsel to have objected to the initial stop and arrest.  In addition, no items that were seized in

the truck were admitted at trial.  The items seized from the truck at the time of the arrest were a

black ski mask, two nylon ropes, 12 pictures and one playboy online add.  The State attempted to

introduce a picture of the ski mask and ropes (Exhibit 21) and the defense objected. (Tr. 300).

The court sustained the defense objection and the picture was not admitted. (Tr. 303) The Motion

in Limine as to **J is GRANTED**.

### K. Trial Attorney Misconduct:

The Petitioner claims that his trial attorney forced him to let his trial attorney lie and say

that alleged victim was on the other side of the car (passenger side), when petitioner approached

the car.

The Defendant did not testify at trial but he did give a lengthy statement to the police after his arrest.  (Tr. 308-342) The Petitioner had asserted in his statement that when he approached her she was standing at the driver's side door and that he walked around to the passenger side and got in and that the victim was driving when they left the car wash. (Tr. 330) The victim did testify that the Petitioner approached her while she was standing by the driver's side door and that the Petitioner forced her into the car and that he drove the car away from the car wash. (Tr. 179).  During cross examination the defense got the witness to admit that she did tell the police that "he had to climb across the console into the passenger's seat and that he got in the driver's side and drove". (Tr. 202).  The defense did ask the witness if she was "absolutely sure you were not on the passenger's side, you were on the driver's side of the car?" To which she responded that she was "absolutely 100 per cent positive".   (Tr. 205)

The Petitioner contends that the questioning by the Defense, in light of the victim's statement and the statement given by the defendant at time of questioning, caused the jury to disbelieve his trial attorney. There is absolutely nothing in the record to support this conclusory language by the Plaintiff. The record does show that the Petitioner's attorney did attempt to imply to the jury that the victim did enter the car after the petitioner had entered the car and therefore she entered voluntarily and not by force. (Tr. 391) The question presents one of trial strategy or tactics and constitutes a fact question for the court.  The Respondent's Motion in Limine as to court **K is DENIED**.

**M.  Information Defect:**

The Petitioner contends that Count I in the 2nd Amended Information (Tr. 1) is defective because it alleges that he restrained another person so as to interfere with her liberty with the

purpose of facilitating the commission of a rape.  The Petitioner claims the charge is defective.

The information is properly worded.  Kidnaping is defined as restraining another person with the

purpose of facilitating the commission of any felony.  Ark. Code. Ann. 5-11-102(a)(3).  Rape is

classified as a felony.  Ark. Code. Ann. 5-14-103.  The Petitioner did withdraw this count at the

hearing on the Motion and the Motion is Limine as to court **M is GRANTED**.

**P.  Suppression Hearing:**

      Trial attorney's abandonment and agreement with prosecutor at suppression hearing on

the issue of absence of discrepancy of knife not being on search warrant of petitioner's residence.

      The Defense filed a Motion to Suppress Evidence (Tr. 14-15)that was seized as a result of

an Affidavit (Tr. 99-100) and a Search Warrant (Tr. 97-98).  The Search Warrant was for

"clothing as described in attached Affidavit, for trace evidence, which may be present on

clothing."

      The defense conducted a voir dire of officer McCoy during the suppression hearing and

determined that the victim had stated that she was threatened with a brown handled kitchen knife

and that what was seized from the residence was a black handled knife. (**Tr. 95**) The defense

tried to contend that the officer had not said anything about a knife in the affidavit and that by not

disclosing the difference in the knife he had mislead the court.  The court pointed out that he was

only to look a the affidavit and that the affidavit did not contain any reference to a the knife and

the court overruled the objection. (**Tr. 96**)

      In Leon, the Court held that the Fourth Amendment exclusionary rule should not be

applied so as to bar the use of the prosecution's case-in-chief evidence obtained by officers acting

in reasonable reliance on a search warrant issued by a detached and neutral magistrate, but

ultimately found to be invalid. The Court further concluded that suppression remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. ) See *U.S. v. Leon*, 468 U.S. 897 at 923, (1984).  See also *Franks v. Delaware*, 438 U.S. 154, (1978). Although we may not look to facts outside of an affidavit to determine probable cause, when assessing good faith, we can and must look to the totality of the circumstances, including what the affiant knew, but did not include in his affidavit. *U.S. v. Martin*, 833 F.2d 752 (8th Cir.1987); *Sims v. State,* 333 Ark. 405, 409-410, (Ark.,1998)

In this instance the officer did not give or fail to give any misleading information.  No information about the knife was given to the judge but abundant facts were presented to the issuing judge to issue the search warrant for the home and the vehicle. (See Affidavit for Search Warrant, Tr. 27-28) The officer merely stated that the victim had been kidnaped and raped and did not put in the affidavit that a knife had been used.  When the officers executed the warrant they observed a knife in the Petitioner's home which they believed was similar to the knife used in the abduction and they seized the knife at that time.

The Petitioner's argument, however,  is that his trial attorney should have raised an illegal seizure argument and contended that the search warrant did not provide for the seizure of a knife but only seizure of clothing.  This has not been addressed at trial and was not addressed in the Motion in Limine.  Officer McCoy testified that he recovered a black kitchen knife in the vehicle (Tr. 95), however, the Return on the Search Warrant does not appear to show that a knife was recovered from the vehicle but it does show that a "knife brown wooden handle" was recovered. (Tr. 98).  This knife was introduced at trial. (Tr. 261) Whether the item was discovered in plain

view or within an area that might reasonable have been expected to be searched is a matter to be resolved.

It does appear that the search warrant listed the address to be searched as "3303 South 66nd St." (Tr. 97), but the return on the search warrant list the address as "3303 South 62nd St." The petitioner's home address was actually 3303 South 62nd Street and was correctly listed in the affidavit (Tr. 99-100) which was made part of the search warrant. It does not appear that this discrepancy was pointed out to the court.

There appear to be factual issues still remaining in regards to issue P and the Motion in Limine as to issue **P is DENIED**.

**Q: Evidentiary Objection about Circumstantial Evidence:**

The Petitioner contends that his trial attorney was ineffective for allowing damaging circumstantial evidence of State's forensic specialist.  The Petitioner does not say exactly what the damaging circumstantial evidence was.  After the petitioner again asserts that the oral sex was consensual (**Doc. 1, p. 15**) he states that "[F]orensic testimony offered by the State was all circumstantial because it could not show that there was a rape committed.

Melissa Myhand, a forensic biologist, testified that she did the DNA analysis comparisons on the victim's underwear and the defendant's blood and that the victim's underwear did show the presence of the defendant's DNA. (Tr. 246-247) Mary Simonson, a forensic biologist, testified that she collected the samples that were submitted to Melissa Myhand for testing. (Tr. 235-236)

The jury is entitled to draw any reasonable inference from circumstantial evidence to the same extent that it can from direct evidence. *White v. State*, 47 Ark.App. 127, 886 S.W.2d 876

-21-

(1994).

The Petitioner admitted that he had ejaculated and he stated that she used her panties to wipe it up. (Tr. 325).  The victim testified that the Petitioner, at the end of the ordeal, masturbated and he used her panties to clean himself up. (Tr. 187).  Neither expert testified that the Petitioner committed the crime of rape, only that his DNA was present on the victim's underwear. The Motion in Limine as to issue **Q is GRANTED**.

**T.  Separated Search Warrant for Residence and Truck:**

The Petitioner contends that his attorney was ineffective by failing to object to the fact that only one search warrant was used for his residence and his vehicle.  The Affidavit for Search Warrant was sufficient and there is no constitutional requirement that the search warrants be separate.  The Motion in Limine as to issue  **T is GRANTED**.

**X. Statements made by Prosecution Witness during Video:**

The Petitioner withdrew this issue during the Motion in Limine hearing and the Motion in Limine as to issue **X is GRANTED.**

IT IS SO ORDERED this 17th day of June 2009

_____        /s/ **J. Marschewski**
                                        HONORABLE JAMES R. MARSCHEWSKI
                                        UNITED STATES DISTRICT JUDGE

-22-